IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

NANCY G. CREEKMORE,

               Plaintiff,                                 Case No.: 3:12-CV-371

  vs.

COMMISSIONER OF                           District Judge Walter H. Rice
SOCIAL SECURITY,                       Magistrate Judge Michael J. Newman

                Defendant.

---

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THE CASE BE REMANDED FOR AN AWARD OF IMMEDIATE SSI AND/OR DIB BENEFITS WITH AN ONSET DATE OF SEPTEMBER 5, 2007; AND (3) THIS CASE BE CLOSED**

---

     This is a Social Security disability benefits appeal. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not disabled, and therefore unentitled to Disability Insurance Benefits ("DIB") and/or Supplemental Security Income ("SSI"). This case is before the Court upon Plaintiff's Statement of Specific Errors (doc. 9), the Commissioner's Memorandum in Opposition (doc. 12), Plaintiff's Reply (doc. 13), the administrative record[2] (doc. 6), and the record as a whole.

     The record demonstrates that, at the time Plaintiff appeared before the ALJ, she was 58 years old. Thus, under the pertinent Social Security regulations, she was classified as an individual "of advanced age." *See* 20 C.F.R. §§ 404.1563(e) (DIB), 416.963(e) (SSI).[3] Under

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number. Additionally, Plaintiff's pertinent medical records have been adequately summarized in her Statement of Errors and the administrative decision, *see* doc. 9 at PageID 1592-1601; PageID 67-81, and the Court will not repeat them here. Where applicable, the Court will identify the medical evidence relevant to its decision.

[3] The remaining citations herein will identify the pertinent DIB statutes and regulations with full knowledge of the corresponding SSI provisions.

the Medical-Vocational Guidelines ("the Grid"), a person with Plaintiff's profile is disabled if they are unable to perform their past relevant work.[4]  20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.06.  The ALJ stopped his analysis at Step 4 -- finding Plaintiff capable of performing her past relevant work -- and thus determining she was not disabled.  The Court finds, for the reasons set forth below, that it was error for the ALJ to reject the opinion of Plaintiff's treating physician, thus ceasing his inquiry at Step 4 and not relying upon the Grid in making his disability determination.  Moreover, given the overwhelming evidence supporting Plaintiff's disability claim, and the lack of substantial evidence presented by the ALJ, the Court recommends that the ALJ's non-disability finding be reversed and Plaintiff receive an immediate award of benefits.

## I.

Plaintiff filed for DIB and SSI on February 8, 2008, alleging a disability onset date of September 5, 2007.  PageID 197-205.  Plaintiff claims she is disabled due to a number of impairments including, *inter alia*, fracture of the spine, Meniere's disease, and chronic obstructive pulmonary disorder.  PageID 197, 225.  After initial denials of her applications, Plaintiff received a hearing before ALJ Peter Silvain on July 16, 2010.  PageID 83-101.  The ALJ issued his decision on November 24, 2010, finding Plaintiff was not disabled.  PageID 82.  Specifically, the ALJ Findings were as follows:

1.      The claimant meets the insured status requirements of the Social Security
         Act through December 1, 2012;

---

[4] The Social Security Administration ("SSA") created the Grid to standardize disability determinations.  *Heckler v. Campbell*, 461 U.S. 458, 461 (1983).  The Grid is based on a series of rules and synthesizes the relevant vocational factors of age, education, and work experience -- along with a claimant's residual functional capacity ("RFC") by categorizing each factor.  20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a).  Age is divided into three categories: younger person (18-49); person closely approaching advanced age (50-54); and person of advanced age (55 and over).  20 C.F.R. §§ 404.1563 (c), (d), and (e).

2.     The claimant has not engaged in substantial gainful activity since September 5, 2007 (20 C.F.R. § 404.1571 *et seq.*);

3.     The claimant has the following severe impairments: cervical disc degeneration; right shoulder pain with tendonosis and bursitis; chronic obstructive pulmonary disease ("COPD") and chronic bronchitis; Meniere's disease and decreased hearing on the right; irritable bowel syndrome; [gastroesophageal reflux disease, known as] GERD; bilateral carpal tunnel syndrome; occipital headaches; bilateral chondromalacia of the knees; and obesity (20 C.F.R. § 404.1520(c));

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526);

5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity [("RFC")][5] to perform light work as defined in 20 C.F.R. § 404.1567(b) except that she can only occasionally climb ladders, ropes, or scaffolds; and she can frequently push and/or pull on the right, climb ramps or stairs, stoop, kneel, crouch, or crawl no more than frequently.  She can perform no overhead reaching on the right and only occasional overhead reaching on the left.  She must avoid all exposure to hazardous machinery and unprotected heights, and she is limited to occupations that do not require fine hearing capabilities;[6]

6.     The claimant is capable of performing past relevant work as a cashier and jewelry clerk.  This work does not require the performance of work-related activities precluded by the claimant's [RFC] (20 C.F.R. § 404.1565); [and]

---

[5] A claimant's RFC is the most physical exertion a claimant can perform in the workplace despite his or her impairments and any related symptoms, such as pain.  20 C.F.R. § 404.1545(a).  The assessment is based on all relevant evidence in the record and the claimant's ability to meet the physical, mental, sensory, and other requirements for work as described in 20 C.F.R. §§ 404.1545 (b), (c), and (d).

[6] The SSA classifies jobs as sedentary, light, medium, heavy, and very heavy, depending on the physical exertion requirements.  20 C.F.R. § 404.1567.  Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or….sitting most of the time with some pushing and pulling of arm or leg controls."  *Id.* at § 404.1567(b).  An individual who can perform light work is presumed also able to perform sedentary work.  *Id.*  Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties."  *Id.* at § 404.1567(a).

7.   The claimant has not been under a disability, as defined in the Social Security Act, from September 5, 2007, through the date of this decision (20 C.F.R. § 404.1520(f)).

PageID 85-100 (brackets and footnotes added).

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner.  PageID 53-55; *see Casey v. Sec'y of H.H.S.*, 987 F.2d 1230, 1233 (6th Cir. 1993).  This timely appeal followed.  *See Cook v. Comm'r of Soc. Sec.,* 480 F.3d 432, 435 (6th Cir. 2007).

## II.

### A.  Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria.  *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).  In performing this review, the Court must consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971).  When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled.  *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Thus, the ALJ has a "'zone of choice' within which the Commissioner can act without the fear of court interference."  *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the

record.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009).  "[A] decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

**B.  "Disability" Defined**

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 425(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(2).

Administrative regulations require a five-step sequential evaluation for disability determinations.  20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

## III.

Plaintiff argues that the ALJ erred in two respects: first, by ignoring her treating physician's opinion regarding the severity of her impairments; second, in making his credibility determination.[7] Doc. 9 at PageID 1602, 1607. For the foregoing reasons, the Court agrees that the ALJ erred in not deferring to Plaintiff's treating physician's opinion. This is the unusual case where the ALJ stopped his analysis of the claimant's condition at Step 4 and did not proceed to the final step. 20 C.F.R. § 404.1520(a)(4). Had the ALJ given deference to Plaintiff's treating physician, who opined that she was not capable of performing her past relevant work, the ALJ would have applied the Step 5 analysis, thus utilizing the Grid and finding Plaintiff disabled.[8]

### A. Treating Physician Rule

The treating physician rule requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because:

---

[7] In consideration of the Court's favorable decision on Plaintiff's first assignment of error, the Court need not consider her second assignment of error -- that the ALJ's credibility assessment was erroneous. Nonetheless, having carefully reviewed this claim and recognizing that an ALJ's credibility findings are entitled to considerable deference and should not be lightly discarded, *Casey*, 987 F.2d at 1234, the Court finds Plaintiff's second assignment of error unpersuasive.

[8] The Grid groups claimants into vocational profiles which are used to assess their disability status. According to the Grid, individuals of advanced age, like Plaintiff, who can no longer perform vocationally relevant past work and who have a history of unskilled work experience, or who have only skills that are not readily transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity, are deemed disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.00(c).

> "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)). Thus, an ALJ must give controlling weight to a treating source if he or she finds the opinion well-supported by medically acceptable data and not inconsistent with other substantial evidence of record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)).

Closely associated with the treating physician rule is the "good reasons rule," which "require[s] the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley*, 581 F.3d at 406 (citing 20 C.F.R. § 404.1527(d)(2)). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* at 406-07.

### 1. Treating Physicians

Hugh Moncrief, M.D. served as Plaintiff's treating neurosurgeon following her car accident on September 5, 2007. PageID 67. Dr. Moncrief maintained a treatment relationship with Plaintiff through June 2008. PageID 51. During that time, Dr. Moncrief repeatedly documented that Plaintiff was unable to work on a sustained basis due to muscle tightness, right side pain, neck pain, and headaches as related to the cervical fracture and injuries she suffered during the accident. PageID 964, 966-71, 974, 978-81. For example, in a May 8, 2008 medical form for Plaintiff's employer, Dr. Moncrief opined that Plaintiff had persistent pain in the upper

back and neck, and that this pain had continued since her car accident.   PageID 965.
Additionally, in medical assessments completed in November 2007, January 2008, February
2008, April 2008, May 2008, and June 2008, Dr. Moncrief determined that Plaintiff's condition
had not improved and she continued to experience complications related to her cervical spine as
well as persistent pain.  PageID 966, 974, 978.

Notably, Dr. Moncrief's findings are corroborated by Plaintiff's other treating physician,
pain specialist Townsend Smith, M.D.   In November 2007, Dr. Smith began administering
trigger point injections for Plaintiff's neck and back pain.  PageID 944.  In August 2008, Dr.
Smith opined that she "had not much improvement with minor trigger point injections," and
determined she continued to have pain in her cervical neck and spine.  PageID 932.   He
recommended cancelling the injections as they were not effective.  *Id.*  He agreed she was unable
to return to work.  *Id.*  In July 2008, Dr. Smith referred Plaintiff to Michael J. Pedoto, M.D. for
an evaluation, as Dr. Smith had been unable to manage her pain.  PageID 918.   Dr. Pedoto
thereafter opined that Plaintiff "had very appropriate treatment to date" but despite this, she
"continue[d] to have ongoing pain issues."  PageID 920.   He determined that the Plaintiff was
"unemployable" until she received reconditioning, work hardening, and additional physical
therapy.  PageID 920-21.

### 2.  The ALJ's Decision

While the ALJ acknowledged the opinions of Dr. Moncrief and Dr. Smith, he gave "little
weight to their opinions that the claimant was unable to work . . . as there is no indication that
these physicians are qualified to offer an opinion on the claimant's employability."  PageID 80.
The ALJ discredited Dr. Moncrief's opinion on the grounds that he had "opined only that
[Plaintiff] should not lift more than fifty pounds as part of her job duties."  PageID 79.  This

evaluation of Dr. Moncrief's June 2, 2008 narrative letter does not accurately convey Dr. Moncrief's assessment. PageID 894. In it, Dr. Moncrief stated that Plaintiff could not return to her previous position at Wal-mart, as that job required her to "lift upwards of fifty pounds" and he found it was not "something she should be doing on a regular basis." *Id*. Dr. Moncrief's statement does not represent an opinion that Plaintiff could lift any object less than 50 pounds, as the ALJ alleged in his decision. PageID 80. Additionally, the June 2008 opinion closed with Dr. Moncrief finding that Plaintiff's pain had not subsided at that time and she was not able to return to work. *Id*. Aside from the statement regarding Dr. Moncrief's June 2, 2008 opinion, the ALJ does not address his other reasons for failing to defer to Dr. Moncrief's opinion. *Id*.

Additionally, the ALJ failed to adopt any of Dr. Smith's findings without providing good reasons for doing so. The ALJ gave little weight to Dr. Smith's August 31, 2009 RFC, which found Plaintiff was unable to perform even sedentary work. PageID 79. Treatment records from Dr. Smith mirror the records of Dr. Moncrief in that he diagnosed Plaintiff with cervicothoracic myofascial pain syndrome with intractable pain. PageID 931. Dr. Smith also found that Plaintiff's pain condition was not responsive to the treatments he provided, and suspended those treatments as a result. PageID 957.

The ALJ gave "significant weight," on the other hand, to the opinions of three non-treating physicians, Drs. Danopulos, Hinzman, and Manos. PageID 78. Dr. Danopulos examined Plaintiff on one occasion, while Drs. Manos and Hinzman merely reviewed her medical records and never met with or examined Plaintiff. PageID 676, 880, 1036. Dr. Danopulos did not make an RFC determination, but opined that Plaintiff's "ability to do any work-related activities is affected from her morbid obesity of 216 pounds versus a height of [five feet two inches], mild lumbosacral spine arthritis, bilateral knee arthralgia, and cervical spine

arthralgia." PageID 682. Dr. Danopulos additionally stated that Plaintiff's spine was "painful by pressure in its entire length" and her spine motions were "restricted and painful." PageID 682. Dr. Hinzman reviewed Plaintiff's file on May 30, 2008, and found her capable of performing light work. PageID 881. He assessed no reaching limitations or hearing limitations, failing to acknowledge that Plaintiff has decreased hearing on her right side and shoulder limitations, even though the ALJ considered these "severe impairments." PageID 883. For her opinion, Dr. Manos offered a one-sentence affirmance of Dr. Hinzman's May 30, 2008 assessment. PageID 1036.

The ALJ relied upon Plaintiff's reviewing and examining physicians to find that Plaintiff was capable of performing her past work as a jewelry clerk and cashier at the light exertional level. PageID 78. The ALJ, as noted, gave these non-treating sources "significant weight" and found them to be "consistent with the substantial medical evidence of record." *Id.*

### 3. Medical Opinion Factors

The "good reasons" rule requires an ALJ to provide good reasons for not giving deference or substantial weight to a plaintiff's treating physician. *Blakely*, 581 F.3d at 406. Where an ALJ fails to give good reasons on the record for according less than controlling weight to treating sources, the Court must reverse and remand, unless the error is harmless. *See Wilson*, 378 F.3d at 547.

Even if not entitled to controlling weight, the ALJ should have still applied the relevant factors in determining how much weight to afford Dr. Moncrief's opinion as Plaintiff's treating neurologist. It is well-established that when a treating source's opinion is not accorded controlling weight, the ALJ must apply certain factors: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship,

supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Bowen*, 478 F.3d at 747 (citing 20 C.F.R. § 404.1527(d)(2)). Here, the ALJ listed these factors in rejecting Dr. Moncrief's opinion, but he did not apply them. *See* PageID 80. The ALJ also failed to acknowledge that Dr. Moncrief treated Plaintiff consistently following her September 2007 car accident. *See generally* PageID 888-901. During those visits, Dr. Moncrief repeatedly documented Plaintiff's neck and shoulder pain and continued to assess her as unable to return to her previous place of employment. *Id.* Moreover, Dr. Moncrief's opinion -- that Plaintiff could no longer perform her past relevant work -- was consistent with the record as a whole, including objective medical evidence and the findings of both treating and examining physicians, such as Dr. Smith. PageID 926-44, 675-83. Therefore, the ALJ should have deferred to Dr. Moncrief's opinion.

Additionally, opinions of one-time examining physicians and record-reviewing physicians are also weighed under the same factors as treating physicians. *See* 20 C.F.R. § 404.1527(d), (f). The ALJ did not apply these factors, however, in evaluating how much weight to give the state-consulting physicians. *See* PageID 78-80. Notably, the ALJ failed to consider that the opinions of Drs. Hinzman and Manos differed significantly from the objective medical evidence and clinical findings of Drs. Moncrief and Smith. For instance, Dr. Hinzman's RFC findings were drastically different from Dr. Moncrief's treatment records. Dr. Hinzman found, for example, that Plaintiff could lift up to twenty pounds occasionally and ten pounds frequently; he also determined that her condition did not present any issues with reaching and grasping regarding her shoulder injury; and he opined she did not have a hearing impairment. PageID 883-84. This assessment differs greatly from Dr. Moncrief's opinion and the evidence of record.

Likewise, in affording more weight to the reviewing physicians, the ALJ did not take into account the extremely limited nature of their treatment relationship with the Plaintiff: Drs. Hinzman and Manos never actually examined Plaintiff.  PageID 880-87, 1036.  Moreover, the ALJ discredited the opinion of the examining physician, Dr. Pedoto, stating that he only examined Plaintiff "on one occasion," and gave his opinion "little weight . . . pursuant to 20 C.F.R. § 404.1527(d)."  PageID 81.  Dr. Pedoto did a thorough examination of Plaintiff in an attempt to aid Dr. Smith's treatment.  PageID 918.  The ALJ failed to acknowledge that Drs. Hinzman and Manos never examined the Plaintiff in person, yet he gave their opinions significant weight in comparison.  Additionally, Dr. Manos is a general/family practice physician, and did not have a specialty associated with Plaintiff's physical issues.  Yet the ALJ gave Dr. Manos' opinion controlling weight in making his determination -- over that of her treating neurologist, Dr. Moncrief, a medical specialist.  PageID 1036;  20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

Additionally, the ALJ's RFC finding failed to take into account Dr. Moncrief's medical opinion regarding the severity of Plaintiff's condition and her resulting functional limitations.  It also failed to consider Plaintiff's own testimony regarding how she actually performed her past jobs.  PageID 104-15.  Instead, the ALJ accepted the opinions of the state-consulting physicians over the other evidence of record.  Therefore, the ALJ ignored Drs. Moncrief and Smith's consistent reports that Plaintiff's neck pain had not subsided and that she was receiving little relief from treatment.

The ALJ's reasons for not fully crediting Dr. Moncrief's medical opinion are not wholly articulated in his decision. Beyond the bare assertion that Dr. Moncrief's opinion was taken into consideration regarding the lifting restrictions in Plaintiff's RFC, the ALJ did not articulate good reasons for failing to give Dr. Moncrief's medical opinion significant weight. PageID 80. The ALJ's failure to meaningfully review the applicable factors deprives the Court of an opportunity to consider whether the ALJ provided "good reasons" for giving less than controlling weight to the findings of Plaintiff's treating physicians, and represents reversible error. *Blakely*, 581 F.3d at 406-07.

### B. Plaintiff is Entitled to an Award of Benefits

In Finding Number 6, the ALJ determined that Plaintiff is capable of performing her past relevant work as a cashier or jewelry clerk. PageID 81. In making this finding, the ALJ stopped his analysis at Step 4 and relied on the VE's testimony that Plaintiff could perform her past work as it is described in the Dictionary of Occupational Titles ("DOT"). PageID 81. The ALJ found that Plaintiff had the severe impairment of chondromalacia of the bilateral knees, yet gave Plaintiff no standing or sitting restrictions in his RFC assessment. PageID 67. Plaintiff testified that her prior position allowed for "no more than fifteen minute breaks every two hours" and a sitting option was unavailable. PageID 108. Had the ALJ determined that Plaintiff had any restrictions in sitting or standing, as found by her treating physician, she would have been unable to perform her prior relevant work. PageID 108, 134.

By stopping his assessment at Step 4, the ALJ failed to apply the Grid in determining what other positions Plaintiff would be capable of performing in the regional economy, were she not able to perform her prior work. *See* Table No. 2, App. 2, Subpt. P, Reg. No. 4; PageID 81. This is problematic, as Plaintiff was a person of "advanced age" at the time of the ALJ's

decision.  *See* 20 C.F.R. § 404.1563(e) (requiring the Commissioner to consider age along with severe impairments and limited work experience as seriously affecting the ability of a person of advanced age to adjust to other work).  At the time of the hearing, Plaintiff's vocational profile, according to the Grid, had four parts:  she was (1) "a person of advanced age"; (2) a high school graduate with a background that does not provide for direct entry into skilled labor; (3) she had semi-skilled experience with nontransferable skills; and (4) a limited RFC for light work.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.06.  Given this profile, and using the Grid -- Table No. 2 as a frame of reference -- Plaintiff was considered "disabled" in terms of light work, were she unable to perform her past relevant work as a cashier or jewelry clerk.  *Id.*

When, as here, the non-disability determination is unsupported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing, or reverse and grant benefits.  The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing."   42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100, 111 (1991).   The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so remand would merely involve the presentation of cumulative evidence.  *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).  Such is the case here. As recounted herein, had the ALJ properly relied on Plaintiff's treaters and determined Plaintiff could no longer perform her past relevant work, there would have been no jobs available to Plaintiff due to her "advanced age" classification, when analyzed under the Grid.  Therefore, Plaintiff became disabled when she was involved in a car accident and could no longer return to her past work, on September 5, 2007.  PageID 225.  As such, proof of disability is strong and remand will serve no purpose other than delay Plaintiff's SSI and DIB claims, which were filed in February 2008, nearly six years ago.  PageID 1591.  All substantial

-14-

factual issues have been resolved, and the record reflects that Plaintiff became "disabled" upon

being involved in a car accident on September 5, 2007.

## IV.

### IT IS THEREFORE RECOMMENDED THAT:

1.  The Commissioner's non-disability finding be found unsupported by
    substantial evidence, and **REVERSED**;

2.  This matter be **REMANDED** for an immediate award of DIB and/or SSI
    benefits, with a disability onset date of September 5, 2007; and

3.  This case be **CLOSED** on the docket of this Court.


January 6, 2014                                   **s/ Michael J. Newman**
                                                  United States Magistrate Judge

-15-

## <u>NOTICE REGARDING OBJECTIONS</u>

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report and Recommendation is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F), and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.  As is made clear above, this period is likewise extended to **SEVENTEEN** days if service of the objections is made pursuant to Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).